**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**IN ADMIRALTY**

**CASE NO. 13-62116-CIV-LENARD/GOODMAN**

IN THE MATTER OF:

The Complaint of Boston Boat III, L.L.C.
d/b/a Water Transportation Alternatives
as Owner of *Island Adventure*, a 1964
Paasch Marine Service vessel bearing Hull
Identification No. 153, USCG Official
Number 295280, its Engines, Tackle,
Appurtenances, Equipment, & Etc., in a
cause of Exoneration from or Limitation of
Liability,

Petitioner.

_____/

## ORDER GRANTING, IN PART,

## RESPONDENT'S MOTION FOR SPOLIATION SANCTIONS

Claimant Joseph Galioto is a guitarist who was allegedly injured on December

15, 2012 when he was playing a holiday gig aboard the vessel *Island Adventure* during

the Fort Lauderdale Winterfest Boat Parade. Galioto says that an unidentified passenger

fell into him. He continued playing for approximately two more hours and did not

report the incident to the vessel's captain or crew until months after the voyage. Galioto

says he was injured on the top deck of the 142-passenger vessel.

After Galioto's counsel sent a letter to the vessel's owner asking for insurance information, the vessel owner, Petitioner Boston Boat III, L.L.C. ("Boston Boat"), filed a complaint on September 27, 2013 for exoneration from, or limitation of, liability. Two months later, Galioto filed his answer and affirmative defenses -- and a Counterclaim. In the November 27, 2013 Counterclaim, Galioto, the Respondent, alleged, among other things, that the boat owner was negligent (1) "for failure to have proper handgrabs and/or rails in the event that passengers lose their blalance," (2) "failing to have adequate non slip or non skid surface in the vicinity of the area of the passenger's fall," (3) "failing to adequately warn of latent defects aboard the vessel," and (4) "creating a dangerous condition aboard the vessel."

Galioto alleges that the incident caused him severe and permanent injuries, requiring two back surgeries.

Before Galioto's expert had the opportunity to inspect the vessel, and approximately one year after the litigation began, Boston Boat ripped out all the carpeting on the upper deck, ground down the deck under the carpet and generally changed the upper-level of the *Island Adventure.* Boston Boat did not give Galioto advance notice of these developments, but its expert saved a six-inch by six-inch square of the carpet, though no one knows exactly where on the deck the small carpet sample was located.

Galioto filed a sanctions motion [ECF No. 57] based on what he deems spoliation, and he seeks the most-extreme sanction of a default judgment against Boston Boat. Alternatively, he seeks an adverse inference directing the jury that the spoliated evidence would have supported his case "by showing that the condition of the floor caused the fall that lead to Mr. Galioto's injuries." Finally, he seeks another alternative type of relief: a rebuttable presumption "of negligence," and that "the condition of the vessel's floor was inadequate under the circumstances."

United States District Judge Joan A. Lenard referred [ECF No. 59] the motion to me. For reasons outlined in greater detail below, the Undersigned grants the motion, but only in part. The relief will not be the extreme type -- default -- sought by Respondent Galioto. Instead, the Undersigned finds that a permissible, *rebuttable* presumption -- that the ripped-out carpet and ground-down deck surface would have demonstrated that the carpet and/or floor were defective, in disrepair or in a dangerous condition -- is the appropriate remedy.[1]

---

[1]     As a federal magistrate judge, the Undersigned has authority to enter an order, as opposed to a report and recommendations, denying a motion for sanctions or granting a motion with relief less drastic than dismissal or default. Federal Rule of Civil Procedure 72(a) authorizes magistrate judges to issue orders on any type of "pretrial matter not dispositive of a party's claim or defense." In determining between dispositive and non-dispositive sanctions, the critical factor is what sanction the magistrate judge *actually* imposes, rather than the one *requested* by the party seeking sanctions. *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519-20 (10th Cir. 1995). *See generally Moore v. Napolitano*, 723 F. Supp. 2d 167 (D.D.C. 2010) (rejecting argument that the magistrate judge entered a severe sanction akin to a litigation-ending default and affirming order precluding defendant from offering certain evidence at trial). In fact,

## I.      Legal Standards

Galioto argues that default or other severe sanctions are required here for bad faith spoliation of evidence.  But he *also* argued, in his motion and reply, that he would be entitled to a sanction of a presumption of negligence even if the Court were to determine that Boston Boat did not act in bad faith.  He says a rebuttable presumption of negligence applies even if Boston Boat's destruction of evidence was merely negligent. But Galioto relies primarily on inapplicable state court opinions, a strained reading of an Eleventh Circuit case, and an overly-expansive interpretation of a non-binding district court case, which is inconsistent with later rulings from the Eleventh Circuit.

Galioto conceded, in his motion, that "federal law controls spoliation sanctions" in this case, but also says that the Court's opinion may be "informed" by state law -- "as long as it is consistent with federal law." As outlined below, applicable Eleventh Circuit law requires **bad faith** in order to support a sanction for spoliation under the inherent power doctrine.  Thus, the Court cannot be informed by *contrary* state law opinions on spoliation sanctions.

---

federal magistrate judges in this circuit often enter orders when parties seek sanctions, including default judgments or dismissals, for spoliation. *See Calixto v. Watson Bowman Acme Corp.,* No. 07-60077-CIV, 2009 WL 3823390 (S.D. Fla. Nov. 16, 2009).

Therefore, the mere fact that Galioto *requested* default judgment in his favor does not prohibit the Undersigned from entering an order, as opposed to a report and recommendations, imposing lesser, non-dispositive relief.

Galioto's confusion over the applicable law is ultimately academic, however, as the Undersigned **does** in fact find that Boston Boat acted in bad faith when it destroyed the relevant evidence necessary for Galioto to examine in order to support his allegations of defective or improperly-maintained carpeting and the under-carpet deck and creating a dangerous condition. The bad faith was not egregious or outrageous, however, which is why only a comparatively modest sanction is being imposed.

### a.    Spoliation

In an admiralty lawsuit such as this one, federal law governs the imposition of spoliation sanctions because spoliation sanctions constitute an evidentiary matter. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). Although federal law governs, a court may look to state law for guidance to the extent that it is consistent with federal law. *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1322 (S.D. Fla. 2010).

Spoliation is the "*intentional* destruction, mutilation, alteration, or concealment of evidence." *Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV, 2009 WL 3823390, at *13 (S.D. Fla. Nov. 16, 2009) (emphasis added) (citing *Black's Law Dictionary* 1437 (8th ed. 1999)); *see Southeastern Mech. Servs., Inc. v. Brody*, No. 8:08-CV-1151-T-30EAJ, 2009 WL 2242395, at *2 (M.D. Fla. July 24, 2009) (spoliation is "the intentional destruction or concealment of evidence"); *cf. Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003) (spoliation defined as the destruction of evidence or the

5

significant and meaningful alteration of a document or instrument, without reference to intentionality). Courts in this circuit have been inconsistent as to whether spoliation includes intent.[2] Because the Eleventh Circuit's decision in *Green Leaf Nursery* did not include "intentional" in its definition of the destruction of evidence requirement for spoliation, the Undersigned will not include that requirement in the analysis.

In meeting the requirement to demonstrate that the spoliated evidence was **crucial** to the movant's ability to prove its *prima facie* case or defense, it is not enough for the movant to show only that the spoliated evidence would have been *relevant* to a claim or defense. *See Managed Care Solutions*, 736 F. Supp.2d at 1327-28 (finding that the allegedly spoliated evidence was not **crucial** to the plaintiff's claims because it could still prove its case through other evidence already obtained elsewhere); *Floeter v. City of Orlando*, No. 6:05-cv-400-Orl-22KRS, 2007 WL 486633, at *6 (M.D. Fla. Feb. 9, 2007) (missing emails were not **critical** to plaintiff's case).

A party is permitted to ask the trial court to allow it to introduce into evidence at trial the circumstances surrounding the opposition's failure to retain and produce

---

[2] For example, the "intentional" component *is* included in the spoliation definitions in *Optowave Co., Ltd. v Nikitin*, No. 6:05-CV-1083-Orl-22DAB, 2006 WL 3231422 (M.D. Fla. Nov. 7, 2006), *Southeastern Mechanical Servs.*, 2009 WL 2242395, and *Calixto*, 2009 WL 3823390. The "intentional" factor is not included in *Graff v. Baja Marine Corp.*, 310 F. App'x 298 (11th Cir. 2009), *Corp. Fin., Inc. v. Principal Life Ins. Co.*, No. 05-20595-CIV, 2006 WL 3365606 (S.D. Fla. Nov. 20, 2006), and *Green Leaf Nursery*, 341 F.3d 1292. *Graff*, however, is a "not for publication" opinion based, in part, on Georgia law.

evidence, even when the trial court rejects the request for an adverse inference jury instruction. *Managed Care Solutions,* 736 F. Supp. 2d at 1334.[3]

    **b.**    ***Sanctions and Spoliation Sanctions***

A court has broad discretion to impose sanctions for litigation misconduct based on its inherent power to manage its own affairs. In order to impose sanctions based on the Court's inherent power, however, a finding of bad faith is required. *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991)). In this circuit, sanctions for spoliation of evidence may include: "(1) dismissal of the case [or default judgment against defendant]; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." *Flury*, 427 F.3d at 945. In the instant case, Galioto urges the first and third type of sanctions -- the third of which includes the imposition of an adverse inference.

There are different types of adverse inferences, ranging in ever-increasing levels of harshness. The harshest type results in a jury being instructed that certain facts are deemed admitted and must be accepted as true. A second type results in the imposition of a mandatory, albeit rebuttable, presumption. The least-harsh type of adverse inference permits a jury to presume that the lost evidence is relevant and favorable to the innocent party. With this third type of adverse inference, the jury also considers the

---

[3]    Therefore, the Undersigned's Order permits Boston Boat to introduce evidence at trial to rebut Galioto's request that the jury adopt the permissible inference. And Galioto, in turn, may introduce evidence designed to persuade the jury to adopt the inference based on the spoliation.

spoliating party's rebuttal evidence and then decides *whether* to draw an adverse inference. *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 470 (S.D.N.Y. 2010) *abrogated on other grounds by Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135 (2d Cir. 2012).

In this case, Galioto, as the moving party on its spoliation sanctions motion, carries the burden of proof. "[T]he party seeking [spoliation] sanctions must prove . . . first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense." *Walter v. Carnival Corp.*, No. 09-20962-CIV, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010) (citing *Floeter*, 2007 WL 486633, at *5); *see also Managed Care Solutions*, 736 F. Supp. 2d at 1322.

### c.   *Bad Faith Requirement*

But even if all three of the other spoliation elements are met, "[a] party's failure to preserve evidence" rises to the level of sanctionable spoliation in this circuit "only when the absence of that evidence is predicated on **bad faith**," such as where a party purposely "tamper[s] with the evidence." *Bashir v. Amtrak,* 119 F.3d 929, 931 (11th Cir. 1997) (emphasis added); *see also Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1294 (11th Cir. 2003) (no adverse inference from missing label because there was no indication of bad faith). Mere negligence in losing or destroying records or evidence is

insufficient to justify an adverse inference instruction for spoliation. *Bashir,* 119 F.3d at 931.

Despite this case law, Galioto insists that spoliation sanctions can be entered under the Court's inherent power in the absence of bad faith. He is incorrect, however.

Although the Eleventh Circuit indicated in *Flury* that bad faith is only one *factor* to consider under Georgia spoliation law, *Flury* does **not** stand for the proposition that bad faith is not required in this Circuit for an adverse inference jury instruction based on spoliation of evidence in an admiralty action where federal law applies. Several reasons support this conclusion.

First, *Flury* construed *Georgia* spoliation law, not federal spoliation law in this Circuit. Second, *Flury* was "a panel decision and as such did not overrule the prior panel decision in *Bashir* . . . requiring a showing of bad faith." *Managed Care Solutions,* 736 F. Supp. 2d at 1328, n.16 (noting that only the Supreme Court or an *en banc* decision from the Eleventh Circuit can judicially overrule a prior panel decision). Third, in several cases following the 2005 *Flury* decision, the Eleventh Circuit has unequivocally held that bad faith **is** required for an adverse inference instruction as a spoliation sanction. *See, e.g., Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1310 (11th Cir. 2009) (noting that a showing of malice is not required to find bad faith but emphasizing that an adverse inference can be "drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on **bad faith**"); *Cox v. Target Corp.,* 351 F.

App'x 381, 383 (11th Cir. 2009) ("jury instruction on spoliation of evidence is required only" when bad faith is responsible for the absence of the evidence); *BP Prods. N. Am., Inc. v. Se. Energy Grp., Inc.*, 282 F. App'x 776, 780 n.3 (11th Cir. 2008) (holding that an adverse inference presumption was appropriate where the district court implicitly determined that the defendant's actions were predicated on bad faith).

To support his argument that the Court can use its inherent power to award spoliation sanctions in the absence of bad faith, Galioto cites, in a post-hearing memorandum [ECF No. 109], *Preferred Partners Holding Corp. v. Humana, Inc.*, No. 08-20424-CIV, 2009 WL 982460, at *4 (S.D. Fla. Apr. 9, 2009).  But *Preferred Partners* is not persuasive for three primary reasons.

First, the Court there did not in fact actually **hold** that bad faith is only one of many factors to consider when analyzing a spoliator's culpability.  Instead, it merely *noted*, in passing, that *one district court in Georgia* had in 2008 interpreted *Flury* as "relegating the bad faith inquiry as one of a handful of factors to consider. 2009 WL 982460, at *4 (citing *Brown v. Chertoff*, 563 F. Supp. 2d 1372, 1381 (S.D. Ga. 2008)).  There is a significant difference between simply mentioning that one non-binding opinion ruled in a particular way and an affirmative holding that the other opinion is in fact the law or that the Court would be adopting or following that ruling.

Second, other district courts in Georgia have **declined to follow** *Brown*.  For example, in *Woodard v. Wal-mart Stores, E. LP*, 801 F. Supp. 2d 1363, 1372-73 (M.D. Ga.

2011), the court expressly disagreed with *Brown* and "decline[d] to read *Flury* as having removed the bad faith requirement" and therefore held that "bad faith will be a **requirement** and not simply a factor." (emphasis added). Similarly, in *In re Delta/Air Tran Baggage Fee Antitrust Litig.,* 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 1299), another Georgia district court held that a party's failure to preserve evidence rises to the level of a sanctionable spoliation "**only** when the absence of that evidence is predicated on **bad faith**." (emphasis added) (internal quotation omitted).

Third, and perhaps most importantly, Eleventh Circuit cases decided after *Preferred Partners* and *Brown* hold that bad faith **is** required. The Undersigned is at a loss to understand how a party could legitimately argue that a district court case (i.e., *Preferred Partners)* which does not even expressly hold that bad faith is simply a mere factor is better authority than **later** appellate cases unequivocally holding that bad faith *is* a full-fledged requirement. *See generally, Mann v. Taser, Int'l, Inc.,* 588 F.3d 1291, 1310 (11th Cir. 2009) (decided December 2, 2009, approximately eight months after *Preferred Partners*); *Cox v. Target Corp.,* 351 Fed. App'x 381 (11th Cir. 2009) (decided October 30, 2009, approximately six months after *Preferred Partners)*. At bottom, Galioto's post-hearing memorandum is completely unpersuasive, as it misstates applicable law and ignores binding circuit precedent.

Given this Circuit's requirement that an adverse inference flowing from spoliation requires the presence of bad faith under the inherent authority rule, even

11

grossly negligent conduct would not justify that type of jury instruction when it is not accompanied by bad faith. *See generally Preferred Care Partners Holding Corp. v. Humana, Inc.*, No. 08-20424-CIV, 2009 WL 982460, at *7 (S.D. Fla. Apr. 9, 2009) (declining to order adverse inference even though party's performance in fulfilling discovery obligations was "clearly egregious" and "resulted from the grossly negligent oversights of counsel").[4] Because this Circuit requires a showing of bad faith before sanctioning a party when there is spoliation of evidence, courts in this Circuit must refrain from imposing sanctions when no bad faith is shown. *See Slattery v. Precision Response Corp.*, 167 F. App'x 139, 141 (11th Cir. 2006) (employer's failure to produce documents did not justify an adverse inference because plaintiff had demonstrated no evidence of withholding or tampering with any of the documents in bad faith, and was therefore not sanctionable). *See also Penalty Kick Mgmt.*, 318 F.3d at 1293-94 (no evidence of bad faith in losing label at issue in lawsuit alleging improper disclosure of trade secrets).

In fact, district courts in this Circuit regularly deny adverse inference requests even when there is indisputable evidence of destruction or loss of evidence. *Socas v. Nw. Mut. Life Ins. Co.*, No. 07-20336, 2010 WL 3894142 (S.D. Fla. Sept. 30, 2010) (denying motion to dismiss and for adverse inference jury instruction when doctor negligently failed to suspend her ordinary policy of purging inactive patient files after learning the information in those files was relevant to her disability claim); *Managed Care Solutions,*

---

[4]        This portion of *Preferred Partners* is still good law.

736 F. Supp. 2d at 1332; *Walter*, 2010 WL 2927962 (missing broken deck chair in lawsuit for injuries sustained when plaintiff's deck chair collapsed while he was a cruise ship passenger); *Atl. Sea Co. v. Anais Worldwide Shipping, Inc.*, No. 08-23079-CIV, 2010 WL 2346665 (S.D. Fla. June 9, 2010) (failure to preserve spotlight and electrical wiring); *Calixto*, 2009 WL 3823390, at *14-17 (missing emails). *See also United States v. Barlow*, 576 F. Supp. 2d 1375, 1381 (S.D. Fla. 2008) (loss of PVC marker used to identify the location of a ship's grounding in a lawsuit brought by the government for damage to underwater sanctuary resources when defendant's boat ran aground).

Galioto also argues that the Court has authority to enter a default against Boston Boat or to impose other sanctions under Federal Rule of Civil Procedure 37, for "failure to comply with the rules of discovery."  But Galioto's argument is not premised on Boston Boat's failure to comply with a specific Court *Order* (e.g., that it allow an inspection by Galioto before refurbishing the vessel). Instead, his theory is that the mere failure to permit Galioto to adequately inspect the vessel, pursuant to a discovery request authorized under the Rules of Civil Procedure, is sufficient to justify the same type of spoliation sanctions he seeks under the Court's inherent authority (which requires bad faith). Nevertheless, Galioto contends that Rule 37(d), which concerns failures to provide discovery, authorizes the sanctions available under Rule 37(b), which authorizes sanctions for violations of a court discovery order.

Although Rule 37(b) gives broad discretion to the district court, the sanction of default requires the "willful or bad faith failure to obey a discovery order." *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993). If bad faith is required for severe sanctions for violation of an actual discovery order, then sanctions for a discovery failure in the absence of a court order would likewise require bad faith. In addition, the severe sanction of dismissal or default judgment is appropriate only as a last resort and, because it is an extreme remedy, "should not be imposed if lesser sanctions will suffice." *Navarro v. Cohan*, 856 F.2d 141, 142 (11th Cir. 1988).

A district court's power to impose sanctions for litigation misconduct is "not unlimited," as courts must "wield it wisely and with restraint and discretion." *Ulysse v. Waste Mgmt., Inc. of Fla.*, No. 14-10548, 2015 WL 3684225, at *2 (11th Cir. June 16, 2015). Dismissal of a complaint is appropriate only "when a plaintiff's recalcitrance is due to wilfullness, bad faith or fault." *Rease v. MHM Corr. Servs., Inc.*, 568 Fed. App'x 666 (11th Cir. 2014).

Although Galioto provided an incorrect view of sanctions/spoliation law in the Eleventh Circuit, there are no substantive consequences arising from this significant mistake because, as explained above, the Undersigned finds that Boston Boat's destruction of the carpet and the deck does in fact meet the bad faith requirement.

## II.   <u>Factual Background</u>

As outlined above, Galioto served his counterclaim on November 27, 2013, alleging that the boat's deck floor was defective and not properly maintained and created a dangerous condition. As of then, Boston Boat was on notice of its duty to preserve the evidence relevant to those allegations. Boston Boat does not dispute the existence of this duty or when it first arose.

On March 3, 2015, Galioto served a Request for Production to Boston Boat. Request 31 asked for "[p]roposed dates, locations, and times when Petitioner/Counter-Defendant will allow the Claimant access to the subject vessel to conduct an inspection, measure, survey and photograph." The request was served that same day by email.

The very next day, Boston Boat, its counsel and its expert witness inspected the vessel. By that time, all the carpeting from the top deck had already been removed, and was stacked up on the dock. A worker was in the process of removing carpet from the bottom deck.

Boston Boat's expert decided to remove a small sample of carpet which had been removed from the top deck.  He cut out a 6 inch-by-6 inch sample.  Neither the expert nor Boston Boat's counsel instructed the workers to stop the remodeling/renovation work. Boston Boat never advised Galioto that the carpet had been removed or that a significant remediation project was underway.

At a hearing on the spoliation sanctions motion, Boston Boat's counsel conceded that neither he nor his client nor their expert could say which part of the carpet the sample was taken from during the inspection. Counsel did not have an explanation as to why the attorney present at the inspection did not urge the workers to stop the remediation project, even temporarily. He did not explain why Galioto's counsel was not advised of these developments, either.

Galioto's expert inspected the vessel on May 13, 2015, approximately two and a half months after Boston Boat's expert inspected the vessel with counsel (and when they both realized the top deck carpet had been removed). By then, the area where the accident occurred had been cleared out. No carpeting remained on either deck. Moreover, there was no decking, only bare metal, because the workers had ground down the deck.

Galioto's expert reported that the destruction of the evidence made him "unable to provide any opinions or do any analysis regarding the actual location of the fall."

At the hearing, Galioto's counsel explained that, because the passenger who fell into Galioto is unidentified and cannot be found, he has (or had) "no other way to find out how the fall happened" than to have his expert inspect the carpet and the deck.  He conceded that his expert could still reach an opinion about the non-existence of hand grasps, because they never existed in the first place (i.e., they had not been destroyed,

modified or moved). Therefore, Galioto withdrew the portion of his spoliation motion focused on his claim that an absence of hand grasps caused the fall.

In addition, Galioto's counsel also conceded at the hearing that the demolition of the wall and framing was not directly relevant to the spoliation motion, which, for all practical purposes, focuses on the removal of the carpeting and the grinding down of the deck under the carpet. Therefore, the Court will focus only on the removal/destruction of the carpeting and the deck when analyzing the spoliation sanctions motion.

Galioto's counsel took the deposition of Boston Boat's president and corporate representative, William Walker, on May 15, 2015, two days after his expert attempted to inspect the vessel and, among other tasks, evaluate the carpet and the under-carpet deck. During the deposition, Walker testified that the vessel was taken out of service approximately a year earlier and that the decision to entirely renovate and refurbish the vessel was made approximately half a year before the deposition. [ECF No. 57-7, p. 43.].

Walker testified that he was aware of this pending lawsuit when the vessel was taken out of service and when refurbishing began. He admitted that the top deck "is basically no longer in existence based on the refurbishment." [ECF No. 57-7, p. 47]. Walker said he authorized the renovations, knowing that there was a lawsuit pending which concerned the very same areas, because he "didn't think it had any relevant bearing on the lawsuit or we had to keep going on business, no one instructed us that

17

we couldn't upkeep our vessel or refurbish it or anything like that." [*Id.* at p. 48]. He did not, however, ask anyone (e.g., his counsel or expert or insurance carrier) if he could make changes to the vessel while the lawsuit remained pending..

Questioned further, Walker testified as follows: "I don't think that, you know, experts came out, looked at the boat, and we were like -- we took pictures and we were like, okay, we're moving on with business." [*Id.* at p. 49]. Of course, the expert who examined the vessel was *Boston Boat's* expert, not Galioto's expert. Walker testified that he "really never gave it [i.e., the identity of the expert or which side retained the expert] any thought." [*Id.*]. Walker did not explain how he construed the expert's inspection as adequate when the top-deck carpeting had already been removed by the time that Boston Boat's expert inspected the vessel.

According to Walker's deposition testimony, the refurbishing was not significant because Galioto had pictures (albeit pictures taken after the renovations had begun). [*Id.* at p. 50]. Walker testified that he made the decision to refurbish the boat "with no thought process towards the lawsuit." [*Id.* at p. 52]. Walker conceded that Galioto now has no way of knowing the condition of the carpet. [*Id.* at p. 54]. He also explained that the notion of contacting Boston Boat's attorneys to see if it would be acceptable to refurbish the vessel during the pendency of the lawsuit "never crossed my mind." [*Id.* at p. 55].

In his deposition, Walker explained that he never discussed with his business partner the fact that the refurbishing was being done while a lawsuit was pending. He also said that his company had been named in five other personal injury lawsuits, albeit concerning injuries on other vessels. [*Id.* at pp. 59-60].

Boston Boat contends that the refurbishment (i.e., removing all the carpeting and grinding down the deck under the carpet, leaving only metal) consisted only of "cosmetic changes." [ECF No. 87, p. 1]. Although all the carpeting has been removed and the deck ground down to the metal, Boston Boat argues that "other than cosmetic changes, the vessel remains in its original condition as it relates to Galioto's claim."

Boston Boat concedes [ECF No. 87, p. 5] that the carpet had been removed by the time Galioto's expert inspected the vessel, explaining that the carpet had been removed before its own expert could inspect the area. Boston Boat emphasizes that Galioto's expert (1) was not aware of any carpet issues when he was first retained in the case, (2) was not advised by counsel that a carpeting issue existed, (3) did not bring anything with him to the vessel to test the carpeting, (4) did not know the name of the test used to assess the slipperiness of carpet (i.e., coefficient of friction ("COF") test) and is not qualified to do a COF test, and (5) is not a carpet expert.

Moreover, Boston Boat highlights a portion of Galioto's expert's testimony, where he explained that he would not have tested the carpet if it had been in place. Instead, he would have "just looked at it and determined whether, number one, is it

slippery." [ECF No. 87, p. 7]. On the other hand, the expert also testified that he would have inspected to see "if it had any, you know, lumps or tears in it." Following up on that point, the expert said, "The one thing that concerned me, there was a lot of places that I had seen where there was ground-down metal on that deck, which could have meant some of those spots that were ground down could have been slightly protruding prior to that, but we'll never know." [*Id.*].

Boston Boat argues that the carpet issue is a red herring because Galioto himself testified that the area where he and the band were playing was not slippery and that other fact witnesses all testified "that the carpet was in fine condition on the day of the incident." It also emphasized that these witnesses testified that the carpeting did not appear worn, bunched up or slippery.

Confronted with the spoliation motion, Boston Boat argues that bad faith is lacking because the decision to renovate was not made until two years after the incident and because the decision was "not spurred by litigation but rather a business decision, based upon the general maintenance needs and age of the vessel." It also argues that Galiot's liability theory "can be proved or disproved with the sample." And it notes that the carpet destruction and deck grinding left it "in the same position as Claimant with respect to the carpet as a sample was the only carpet remains available to its experts as well." [ECF No. 87, p. 13].

Boston Boat also contends that the missing or destroyed evidence (the carpet and the deck under it) are not crucial or relevant to Galioto's ability to prove his case. It argues that Galioto's proof problem "lies not in the renovations of the deck but in Claimant's inability to locate the lady who fell." [ECF No. 87, p. 15].  And it says that any prejudice can be cured by other circumstances, such as a review of the video capturing the incident, photographs of the area shortly after the incident, analysis of the carpet sample and eyewitness testimony about the carpet's condition on the day of the incident.

To further support its argument that bad faith is lacking, Boston Boat stresses that it did not "merely gloss[] over the subject area and ignore[] the remainder of the vessel." [ECF No. 87, p. 19]. Finally, it argues that requiring Boston Boat to "pull its vessel from service for an unspecified amount of time is, as a matter of policy, prohibitive." [ECF No. 87, p. 1].

After the hearing, the Undersigned issued an administrative order, requiring the parties to submit expert affidavits, explaining how, why and under what circumstances an adequate COF test can be performed on a six inch-by-six inch rug or carpet sample.

Boston Boat's expert, Aaron Miller, signed an affidavit which explained that at least three types of testing can be applied to the small carpet sample: visual inspection, chemical composition analysis and a COF or slip resistance measurement. He opines that a COF test can be determined by various methods, including "pull force of a

weighted skid." He did not, however, explain how this method could be used on such a small sample. Nevertheless, Miller also opined that slip resistance is not a common safety issue for carpeted surfaces and noted that no carpet specific slip resistance test standards have been established. Therefore, Miller concluded, slip resistance testing, while "possible," is "not typically applied to carpeted surfaces due to the absence of relevant standards."

Galioto never filed an expert rebuttal affidavit, and the time to do so has expired.

## III.   <u>Analysis</u>

The Eleventh Circuit has stated that "[t]he key to unlocking a court's inherent power [to impose sanctions for spoliation] is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). Parties can establish the requisite bad faith through either direct or circumstantial evidence. *Calixto*, 2009 WL 3823390, at *16. Galioto has not called the Undersigned's attention to any direct evidence of bad faith by Boston Boat. The Undersigned will therefore determine whether Galioto demonstrated the requisite bad faith through the use of circumstantial evidence.

In order to demonstrate that Boston Boat destroyed evidence in bad faith through circumstantial evidence, Galioto must establish all of the following four factors: (1) evidence once existed that could fairly be supposed to have been **material** to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it

knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator. *Calixto,* 2009 WL 3823390, at *16. *See also Managed Care Solutions,* 736 F. Supp. 2d at 1331-32 (adopting four-factor test for circumstantial evidence of bad faith).

Before addressing these issues, however, the Undersigned will first outline the relevant law concerning negligence actions arising from slip and falls aboard vessels.

In the Eleventh Circuit, the maritime standard of reasonable care "usually requires that the cruise ship operator have actual or constructive knowledge of the risk-creating condition. *Sorrels v. NCL (Bahamas) Ltd.,* Nos. 13-15858, 14-14467, 2015 WL 4619887 (11th Cir. Aug. 4, 2015). When a ship owner is alleged to have itself created the dangerous condition, then a plaintiff need not show that the owner itself had notice of the alleged condition. *Long v. Celebrity Cruises, Inc.,* 982 F. Supp. 2d 1313, 1316 (S.D. Fla. 2013). *Cf. Pogue v. Great Atl. & Pac. Tea Co.,* 242 F.2d 575, 581 (5th Cir. 1975) (noting that, under Florida law, "the creator of the dangerous condition is charged with notice of the danger caused by his own creation.").[5]

In addition, because Galioto's expert did not have an opportunity to insect the carpet and the deck underneath and a request for an inspection was not made until March 3, 2015 (more than three months after the Counterclaim was filed), the issue of

---

[5]     *Sorrels* cited *Pogue,* and the parenthetical summary of the holding is a direct quote from *Sorrels. Id.,* at *9.

potential delay arises. *Sorrels* addressed the issue of delay when there was a 520-day delay before Plaintiff's expert inspected the deck aboard the ship and conducted his COF test. The district court excluded the expert's proposed testimony because, in part, the slip-resistance tests were conducted a year and a half after the incident. The appellate court held that the district court abused its discretion because "a delay in viewing or inspecting the place where an accident took place normally goes to weight and not to admissibility." *Id.* at 6. *See generally Hurst v. United States*, 882 F.2d 306, 311 (8th Cir. 1989) (upholding admission of river hydraulics expert on cause of flood even though he had visited the site of the flood only once, and that one visit was two years after the flood).[6]

### The Factors

The first factor is easily met and is not disputed.  The evidence -- the upper-deck carpet and the deck underneath the carpet -- existed.

Likewise, there is no dispute over the second factor either, as Boston Boat concedes it had a duty to preserve the evidence.

The parties dispute the third factor: whether the evidence was crucial to Galioto's ability to prove its case.

This "can be a difficult issue upon which to present direct evidence because it concerns information that no longer exists." *Selectica, Inc. v. Novatus, Inc.*, No. 6:13-cv-

---

[6]      *Sorrels* cited *Hurst*, and the parenthetical summary is a verbatim quote from *Sorrels. Id.* at *7.

1708, 2015 WL 1125051, at *5 (M.D. Fla. Mar. 12, 2015). Therefore, "courts must not hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence because doing so allows the spoliators to profit from the destruction of the evidence." *Southeastern Mech. Servs., Inc. v. Brody*, 657 F. Supp. 2d 1293, 1300 (M.D. Fla. 2009) (citing *Kronisch v. U.S.*, 150 F.3d 112, 128 (2d Cir. 1998)); *see also Pacific Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, Case No. 6:12–cv–22–Orl–28DAB, 2012 WL 10817204, at *3 (M.D. Fla. Nov. 30, 2012). In *Southeastern*, the court said "[t]he substantial and complete nature of the destruction of evidence by the spoliator justifies a finding that the destroyed evidence prejudiced a plaintiff." 657 F. Supp. 2d at 1300. Courts have also found that bad faith alone "gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for destruction." *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1282 (M.D. Fla. 2009) (citations omitted).

The Undersigned concludes that the destroyed evidence was crucial to Galioto's ability to prove his claim.  The significance of the destroyed evidence was magnified by the atypical circumstances surrounding the incident.  Usually, the person who slipped or fell is the plaintiff or claimant, and the plaintiff would therefore be able to explain how the incident occurred. Here, however, the person who slipped or fell is unidentified and cannot be located.  Therefore, Galioto, the person into whom the passenger allegedly fell, must produce evidence to demonstrate that a dangerous condition existed -- and that Boston Boat either knew about it, should have known

about it or created it.  In slip and fall cases aboard vessels, claimants typically retain experts such as engineers to inspect the vessel. *See, e.g., Sorrels*. Galioto's expert (or other experts he might have retained) was unable to adequately inspect the relevant portions of the vessel because Boston Boat had removed them.

Although Boston Boat argues that the missing evidence is not critical because an expert can examine a small sample of carpeting, this is not a winning argument. First, no one knows the former on-the-deck location of the small sample.  No one knows if it came from the deck near where Galioto and his band were playing or from a completely different part of the upper deck. Second, the efficacy of any tests or inspections on such a small sample is doubtful. The Undersigned is far from convinced that adequate testing can be performed on a six-inch square sample.  And, even if it could, the testing would be inconclusive because there is no way to know the deck location of the small the carpet sample.

Moreover, Boston Boat does not have an explanation about how the deck could be adequately inspected now because the refurbishing project involved the grinding down of the deck to the metal underneath. Therefore, it would be impossible for an expert to determine whether the deck had been cracked, warped, buckled or otherwise in a dangerous condition.

The Undersigned now turns to the circumstantial evidence factors used to assess whether bad faith was present.

For all practical purposes, the Undersigned already addressed the first circumstantial evidence factor -- whether evidence once existed that could fairly be supposed to have been material to the proof of the claim. The Undersigned construes "material" and "critical" to be similar standards, but, to the extent that they are different, critical would be the higher burden, and the Undersigned previously found that the evidence was critical.

There is no doubt that Boston Boat, the spoliating party, engaged in an affirmative act causing evidence to be lost. The refurbishing did not happen by accident. To the contrary, Boston Boat intentionally decided to rip out the carpeting and grind down the deck even though it knew about the pending lawsuit.

To prove the final circumstantial evidence factor, Galioto must establish that the act causing the loss of evidence cannot be credibly explained as not involving bad faith. The Undersigned finds that Galioto has demonstrated this.

To be sure, Boston Boat argues that the remediation and refurbishing were done for a purely business reason -- routine maintenance. Even if correct, however, that does not sufficiently explain (1) why Boston Boat did not advise its own counsel that it was going to be destroying relevant parts of the vessel, (2) why Boston Boat's counsel did not provide its client with specific instructions to not destroy evidence (including refurbishing or remediating the vessel) before giving experts from both sides the opportunity to inspect, (3) why Boston Boat's owner changed  his story about why he

destroyed the evidence knowing that a lawsuit was pending,[7] (4) why Boston Boat's counsel did not immediately instruct its client to halt the evidence-destroying refurbishing so that corrective measures could be taken, (5) why Boston Boat's counsel did not alert Galioto's counsel of the evidence destruction immediately upon learning of it, (6) why Boston Boat's expert removed a sample of the carpet if the evidence was not critical to the claim, and (7) why Boston Boat's counsel did not immediately alert its client about Galioto's request for an inspection of the vessel.

Boston Boat argues [ECF No. 87, p. 19] that "to require Boston Boat to pull its vessel for an unspecified amount of time is, as a matter of policy, prohibitive." This is not convincing. Boston Boat would not have needed to pull its vessel or indefinitely postpone the refurbishing.  All it needed to do was advise Galioto's counsel that standard maintenance and refurbishing were about to begin and offer Galioto's experts an opportunity to inspect the vessel before the work began.  This might have resulted in a delay of a few **days.**  Under the circumstances, this slight delay would hardly be deemed "prohibitive."

Although the upper deck carpet had been removed by the time Boston Boat's counsel and their expert visited the vessel for an inspection, timely action by counsel

---

[7]      First, Walker said he did not think the evidence was relevant. Then, he explained that he thought it was permissible because an expert -- Boston Boat's expert, not Galioto's expert -- inspected the vessel. And then he said he simply did not give the issue any thought. But he had been involved in several other personal injury lawsuits arising from injuries aboard vessels, so he is hardly a neophyte to litigation and its discovery obligations.

could have postponed the further destruction of additional relevant evidence -- i.e., the grinding down of the deck. In addition, it is possible that other steps could have been taken to minimize the prejudice to Galioto concerning the carpet. For example, counsel could have arranged for multiple, larger samples to have been taken from the carpet piled up on the dock.

Sanctions for discovery abuse are "intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." *Flury*, 427 F.3d at 944. The Undersigned is not persuaded by Walker's explanation that he did not deem the carpet and deck to be relevant to Galioto's claim. Similar to the party sanctioned in *Flury*, Walker "should have known that the [vessel's deck area], which was the very subject of this lawsuit, needed to be preserved and examined as evidence central to [the] case." 427 F.3d at 945. Spoliation of the carpet and deck "forced experts to use much less reliable means [such as having an opportunity to inspect a six-inch carpet sample] of examining the [deck's] condition." *Flury,* 427 F.3d at 946.

Weighing the evidence and the relevant factors, the Undersigned concludes that Boston Boat's overall conduct amounted to more than mere negligence and "breached the bad faith barrier." *St. Cyr v. Flying J, Inc.,* No. 3:06-cv-13-33TEM, 2007 WL 1716365 (M.D. Fla. June 12, 2007) (finding bad faith, refusing to enter extreme sanction of dismissal against plaintiff who sold damaged conversion van to a scrapyard and imposing lesser sanction of an adverse inference instruction because the bad faith was

not "flagrant" and because the Court could not conclude that plaintiff acted "in callous disregard").

The Court has broad discretion to fashion a remedy for spoliation. *See Optowave v. Nikitin*, No. 6:05-cv-1083, 2006 WL 3231422 at *1 (M.D. Fla. Nov. 7, 2006) (citing *Chambers*, 501 U.S. 32 (1991)). "[T]he determination of an appropriate sanction . . . is assessed on a case-by-case basis." *Id.* at *12 (citing *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004)). Sanctions the Court may impose against a defendant for spoliation include, but are not limited to, the following: default judgment, adverse inference or rebuttable presumption instructions to the jury, striking pleadings, and an award of fees and costs incurred by the injured party as a result of the spoliation. *See Flury*, 427 F.3d at 945.

"Factors to be considered when determining the seriousness of the sanctions to impose against a party for failure to preserve critical evidence in its custody vary according to (1) the willfulness or bad faith of the party responsible for the loss or destruction of the evidence; (2) the degree of prejudice sustained by the opposing party; and (3) what is required to cure the prejudice." *St. Cyr v. Flying J. Inc.*, 3:06–cv–13–33TEM, 2007 WL 1716365, at *4 (M.D. Fla. June 12, 2007).

In the instant case, the Undersigned views Boston Boat's destruction of evidence as constituting bad faith, but not in an outrageous or extreme way. Therefore, the Undersigned imposes the least-severe sanction available -- a rebuttable, permissible

adverse inference (that the destroyed evidence would have demonstrated the existence of a dangerous condition which Boston Boat knew about, should have known about or created). *See generally Swofford v. Eslinger,* 671 F. Supp. 2d 1274, 1284 (M.D. Fla. 2009) (imposing adverse inference against deputy in excessive force case for destruction of his laptop computer and finding that deputy offered "no cogent, benign explanation for the failure to exempt [the] computer from that routing purging of old computers in light of the preservation demand"). *See also St. Cyr*, 2007 WL 1716365 (adverse inference); *Southeastern Mech. Servs., Inc.*, 657 F. Supp. 2d 1293 (rejecting Defendants' denials that they deleted information, rejecting explanation that expert witness might have inadvertently deleted data as not plausible and imposing adverse inference type of spoliation sanction because circumstances surrounding the destruction of data, emails, text messages and similar evidence indicated bad faith).

## IV.   <u>Conclusion</u>

Accordingly, the Undersigned **grants, in part**, Galioto's motion for spoliation sanctions. Specifically, the sanction is a **rebuttable adverse inference**, which Boston Boat may seek to rebut at trial.

**DONE AND ORDERED** in Chambers, in Miami, Florida, September 2, 2015.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>Copies furnished to</u>:
Honorable Joan A. Lenard
All Counsel of Record