## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 13-62116-CIV-LENARD/GOODMAN

**IN THE MATTER OF:**
**The Complaint of Boston Boat III, LLC**
**d/b/a Water Transportation Alternatives**
**as Owner of *Island Adventure*, a 1964**
**Paasch Marine Service Vessel Bearing**
**Hull Identification No. 153, USCG Official**
**Number 295280, its Engines, Tackle,**
**Appurtenances, Equipment, & Etc., in a**
**Cause of Exoneration from Limitation of**
**Liability,**

       Petitioner/Counter-Defendant,

**v.**

**JOSEPH GALIOTO,**

       Respondent/Counter-Claimant.
_____/

### ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S MOTION FOR SUMMARY JUDGMENT (D.E. 58)

      **THIS CAUSE** is before the Court on Petitioner Boston Boat III, LLC's Motion for Summary Judgment, ("Motion," D.E. 58), filed June 9, 2015.  Respondent, Joseph Galioto ("Galioto"), filed a Response on July 6, 2015, ("Response," D.E. 71), to which Petitioner filed a Reply on July 16, 2015, ("Reply," D.E. 86).  Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

I.    **Background**[1]

On December 15, 2012, a 142-passenger boat named the *Island Adventure* (or "the vessel") was participating in the annual Winterfest Boat Parade in Ft. Lauderdale's intracoastal waterway.  (Pet. Facts ¶¶ 1-4.)  Claimant Joseph Galioto was hired to be a guitarist for a band performing onboard the vessel during the Boat Parade.  (Id. ¶ 1, 6.)

It is undisputed that on the day of the Boat Parade, the *Island Adventure* proceeded slowly along the parade route, frequently stopping and starting to both maintain its spacing and to keep with the parade organizers' desired pace.  (Pet. Facts ¶ 10.) Approximately two hours into the parade, the vessel reached the Oakland Park Boulevard drawbridge.  (Id. ¶ 11.)  Petitioner states that when it arrived there it "held station," which means it pointed into the prevailing wind to maintain a fixed position.  (Id. ¶ 11 & n.2 (citing Botsolis Depo., D.E. 71-5 at 48-49).)  Galioto argues that video and testimonial evidence shows that the vessel was moving significantly and abruptly.  (Resp. Facts (citing Galioto Depo., 58-2 at 45; Doty Depo., D.E. 71-4 at 18; Preliminary Report of Expert Witness James W. Allen, D.E. 71-6 at 4; Botsolis Depo., D.E. 71-5 at 34-35).)  It is undisputed that Captain Chris Botsolis did not observe a current while holding station. (Botsolis Depo., D.E. 71-5 at 33-34.)

While the vessel waited at the Oakland Park Boulevard drawbridge, an unidentified female passenger lost her balance and fell into Galioto, knocking them both to the ground.  (Pet. Facts ¶ 13.)  This caused severe and permanent injuries to Galioto's

---

[1]    The following facts are gleaned from Petitioner's Statement of Undisputed Material Facts, ("Pet. Facts," D.E. 58 at 1-6), and Respondent's Statement of Material Facts in Dispute, ("Resp. Facts," D.E. 71 at 5-12).  All facts are undisputed unless otherwise noted.

back, requiring two surgeries.  (Res. Facts ¶ 1.)   Galioto was not watching the woman at the time of the incident, and only noticed her as she was falling into him.  (Pet. Facts ¶ 14.)   Nobody reported that the woman was intoxicated.  (Id.)   Galioto got up and continued to play with the band for approximately two hours after the incident.  (Id. ¶ 15.)  He then unloaded his equipment onto the dock.  (Id. ¶ 16.)

Petitioner states that the carpet on the vessel in the area of the fall was in good condition and not slippery.  (Id. ¶ 17.)  Galioto disputes that allegation, stating that "the condition of the carpet will never be known due to the fact that Boston Boat completely destroyed the scene of the incident along with the carpeting that is the subject matter of this litigation."[2]   (Resp. Facts ¶ 17.)   To date, nobody has been able to identify the woman who fell into Galioto.  (Pet. Facts ¶ 18.)

Petitioner states that prior to departure, the vessel's crew provided a general safety announcement, (Pet. Facts ¶ 8 (citing DeVirgiliis Depo., D.E. 58-4 at 10-11)); Galioto disputes that a safety announcement was provided, (Resp. Facts ¶ 8 (citing Walker Depo., D.E. 71-3 at 93-94.  The vessel's deckhand, Nicholas Devirgillis, stated that the vessel has "policies in place regarding the service of alcohol aboard the *Island Adventure*,"

---

[2]     This issue was the subject of a separate Motion for Sanctions for Spoliation of Evidence Against Petitioner.  (See D.E. 57.)  According to Respondent,

> Boston Boat completely removed the incident area from the *Island Adventure*. By the time Mr. Galioto was given the opportunity to inspect the *Island Adventure*, all of the wall panels were removed as well as the window frames, roofing and support poles for the enclosed structure. [D.E. 57 at 4.] Furthermore, there was no decking, just bare metal.

(Resp. Facts ¶ 17.)  On September 2, 2015, Magistrate Judge Jonathan Goodman issued an Order Granting in Part and Denying in Part Galioto's Motion for Sanctions.  (D.E. 113.)  This Order is discussed in Section IV(d), infra.

specifically, to monitor the alcohol consumption of passengers, stop or decrease service to intoxicated passengers, and to discontinue service toward the end of the voyage.  (Pet. Facts ¶ 9 (citing DeVirgiliis Depo., D.E. 58-4 at 27).)  Galioto argues that if there were policies regarding the service of alcohol, they were not accurately portrayed by Mr. DeVirgiliis.  (Resp. Facts ¶ 9 (citing Walker Depo., D.E. 71-3 at 100-102; Langford Depo., D.E. 71-1 at 42; Doty Depo., D.E. 71-4 at 39-40; Galioto Depo., D.E. 71-2 at 31).)

## II.    Legal Standard

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  Summary judgment can be entered on a claim only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In addition, under Federal Rule of Civil Procedure 56(f)(1), the Court may grant summary judgment for the non-moving party "[a]fter giving notice and a reasonable time to respond."  Fed. R. Civ. P. 56(f)(1); see also Gentry v. Harborage Cottages-Stuart, LLLP, 654 F.3d 1247, 1261 (11th Cir. 2011).  The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotation omitted).  The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  A dispute about a material fact is genuine if the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party.  Id. at 248; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party.  The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324; see also Fed. R. Civ. P. 56(c).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial."  Id. at 587.  An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Id.

## III.   Applicable Law

"Federal maritime law applies to actions arising from alleged torts 'committed aboard a ship sailing in navigable waters.'" Smolnikar v. Royal Caribbean Cruises LTd., 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2011) (citing Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1321 (11th Cir. 1989)).

> General maritime law is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules."   See East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864–65, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986).   See also Brockington v. Certified Elec., Inc., 903 F.2d 1523, 1530 (11th Cir. 1990).   In the absence of well-developed maritime law pertaining to [Plaintiff's] negligence claims, [the Court] will incorporate general common law principles and Florida state law to the extent they do not conflict with federal maritime law.   See Just v. Chambers, 312 U.S. 383, 388, 61 S. Ct. 687, 85 L. Ed. 903 (1941) ("With respect to maritime torts we have held that the State may modify or supplement the maritime law by creating liability which a court of admiralty will recognize and enforce when the state action is not hostile to the characteristic features of the maritime law or inconsistent with federal legislation.").   See also Becker v. Poling Transp. Corp., 356 F.3d 381, 388 (2nd Cir. 2004) ("federal maritime law incorporates common law negligence principles generally, and [state] law in particular"); Wells v. Liddy, 186 F.3d 505, 525 (4th Cir. 1999) (in the absence of a well-defined body of maritime law relating to a particular claim, the general maritime law may be supplemented by either state law or general common law principles).

Id.; see also Hesterly v. Royal Caribbean Cruises, Ltd., 515 F. Supp. 2d 1278, 1282 (S.D. Fla. 2007).

## IV.   Discussion

Claimant Joseph Galioto alleged one count alleging various theories of negligence against Petitioner Boston Boat.  (See D.E. 10 ¶ 13.)  Specifically:

a.   Failure to properly navigate the vessel;

b.  Failure to have proper policies and procedures in place to prevent passengers from falling during navigation;

c.  Failure to have proper handgrabs and/or rails in place in the event that passengers lose their balance;

d.  Failure to properly train its crewmembers;

e.  Failing to have adequate handrails and/or handgrabs and/or handholds in the vicinity of the area of the passenger's fall; and/or

f.  Failing to have adequate non slip or non skid surface in the vicinity of the area of the passenger's fall; and/or

g.  Failing to warn of the hazard of not having adequate handrails and/or handgrabs and/or handholds in the vicinity of the area of the passenger's fall; and/or

h.  Failing to promulgate and/or enforce adequate policies and/or procedures regarding passenger's falling during navigation; and/or

i.  Failing to warn passengers of the dangers of falling during navigation; and/or

j.  Failing to adequately warn of dangers aboard the vessel; and/or

k.  Failing to adequately warn of latent defects aboard the vessel; and/or

l.  Creating a dangerous condition aboard the vessel; and/or

m.  Failing to have an adequate crew aboard the vessel; and/or

n.  Failing to promulgate and/or enforce adequate policies and/or procedures aboard the vessel; and/or

o.  Failing to adequately train and/or supervise crew aboard the vessel; and/or

p.  Failing to adequately train and/or supervise the Claimant aboard the vessel;

(Id.)  The Parties' briefs are limited to the specific allegations that Petitioner failed to: (1) provide warnings to passengers regarding the risk of falling during navigation, (id. ¶ 13(i)); (2) promulgate a policy to prevent passengers from falling during navigation, (id. ¶ 13(b), (h), (n)); (3) properly navigate the vessel, (id. ¶ 13(a)); and (4) have adequate handholds and flooring, (id. ¶ 13(c), (e), (f)).[3]  It also argues that it is entitled to limit its liability to the value of the vessel.  (Mot. at 14-16.)

_____

[3]      Petitioner argues that "while there are certainly distinct arguments of liability herein, they should be considered together in totality, rather than as separate and distinct." (Resp. at 15.)  The Court disagrees, as such an approach would render the Complaint violative of

"To satisfy the burden of proof in a negligence action, plaintiff must show: (1) that defendant owed plaintiff a duty; (2) that defendant breached that duty; (3) that this breach was the proximate cause of plaintiff's injury; and (4) that plaintiff suffered damages." Isbell v. Carnival Corp., 462 F. Supp. 2d 1232, 1236 (S.D. Fla. 2006) (citing Hasenfus v. Secord, 962 F.2d 1556, 1559-60 (11th Cir. 1992)).  With respect to the first element, in the maritime context, "'a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew.'"  Chaparro v. Carnival Corp., 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 630 (1959)).  The Eleventh Circuit has stated that

> the benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure.

Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1322 (11th Cir. 1989).

With respect to the third element—causation—the Eleventh Circuit has stated that "fault in the abstract is not sufficient.  To produce liability, the acts of negligence or conditions of unseaworthiness must be a contributory and proximate cause of the accident." Hercules Carriers, Inc. v. Claimant State of Fla., 768 F.2d 1558, 1566 (11th Cir. 1985) (citation omitted).  This requires that Petitioner's breach "be a substantial

---

Federal Rule of Civil Procedure 10(b), which requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  See Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001).

factor in bringing about the harm." Chavez v. Noble Drilling Corp., 567 F.2d 287, 289 (5th Cir. 1978);[4] see also In re Royal Caribbean Cruises Ltd., 991 F. Supp. 2d 1171, 1183 (S.D. Fla. 2013)).   Additionally, "Federal courts exercising admiralty jurisdiction may be guided by 'the extensive body of state law applying proximate causation requirements and from treatises and other scholarly sources.'" In re Royal Caribbean Cruises Ltd., 991 F. Supp. 2d at 1183 (quoting Exxon Co. U.S.A. v. Sofec, Inc., 571 U.S. 830, 839 (1996)). Florida courts require evidence affording a reasonable basis for concluding that

> it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the harm.  A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

Gooding v. Univ. Hosp. Bldg., Inc., 445 So. 2d 1015, 1018 (Fla. 1984);[5] see also In re Royal Caribbean Cruises Ltd., 991 F. Supp. 2d at 1183.

### a.      Negligent failure to warn passengers of the dangers of falling.

First, Petitioner argues that it is entitled to summary judgment with respect to Galioto's claim that it failed to adequately warn passengers of the dangers of falling during navigation.  (Mot. at 10.)  It argues that: (1) it did not have a duty to provide the warnings; (2) it did provide a general announcement that was approved by the U.S. Coast Guard; and (3) there is no evidence of a causal connection between the alleged lack of

---

[4]      In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

[5]      "The standard for a directed verdict in Florida is the same as the summary judgment standard." In re Royal Caribbean Cruises Ltd., 991 F. Supp. 2d at 1183 (citations omitted).

warnings and Galioto's injury.  (Id. at 10-11.)  Galioto argues that a warning should have
been given and that there is a genuine issue as to whether one was provided.  (Resp. at
13-14.)

"[T]his Circuit's decisions have repeatedly held that a ship operator 'is not liable
to passengers as an insurer, but only for its negligence.'"  Bird v. Celebrity Cruise Line,
Inc., 428 F. Supp. 2d 1275, 1282 (S.D. Fla. 2005) (quoting Kornberg v. Carnival Cruise
Lines, Inc., 741 F.2d 1332, 1334 (11th Cir. 1984)).  A shipowner owes its passengers the
duty of ordinary reasonable care under the circumstances.  Chaparro, 693 F.3d at 1336;
Keefe, 867 F.2d at 1322.  "This duty includes a duty to warn passengers of dangers the
[shipowner] knows or reasonably should have known."  Smolnikar, 787 F. Supp. 2d at
1322 (citations omitted).  However, "there is no duty to warn someone of an obvious
danger."  John Morrell & Co. v. Royal Caribbean Cruises, Ltd., 534 F. Supp. 2d 1345,
1351 (S.D. Fla. 2008) (citation omitted).  "The obviousness of a danger and adequacy of
a warning are determined by a 'reasonable person' standard, rather than on each
particular plaintiff's subjective appreciation of the danger."  Byrnes v. Honda Motor Co.,
Ltd., 887 F. Supp. 279, 281 (S.D. Fla. 1994) (citation omitted).  "Although the issue of
whether a defendant exercised reasonable care is generally a jury question, whether a
'duty of care' exists is a question of law to be determined solely by the court."  Zarrella v.
Pac. Life Ins. Co., 755 F. Supp. 2d 1218, 1228 (S.D. Fla. 2010) (quoting L.A. Fitness,
Int'l, LLC v. Mayer, 980 So. 2d 550, 557 (Fla. Dist. Ct. App. 2008)).

Galioto argues that Petitioner had a duty warn its passengers "regarding the risk of
falling due to the 'stop and go' nature of the Winterfest Boat Parade."  (Resp. at 12.)

10

Galioto cites no authority requiring a shipowner to warn its passengers of the risk of falling while standing aboard a boat.  Nor has the Court identified any such authority.

In Summers v. Motor Ship Big Ron Tom, the plaintiff, a passenger aboard a fishing vessel traversing the intracoastal waterway toward the Atlantic Ocean in South Carolina, fell down and broke her ankle.  262 F. Supp. 400, 401 (D.S.C. 1967).  She and her husband "had practically no experience in ocean fishing and were complete strangers to the ways of boats."  Id. at 403.  She alleged that the operator of the vessel knew or should have known of rough sea conditions and failed to warn her that her position on the bow of the vessel "was unsafe under the existing circumstances[.]" Id. at 401.  The court found that conditions were normal, with waves reaching a maximum of three feet in height.  Id. at 403.  It further found that the operator of the ship did provide a warning, but under the normal weather conditions he did not have a duty to warn.  Id. at 404. "There were no unusual or dangerous conditions resulting from the weather, tide or wind existing on that occasion which required the vessel in the exercise of its proper degree of care (the highest degree)[6] toward its passengers to give them instructions or warnings as to where they should ride, or what they should do under the circumstances."  Id. at 405. The Court concluded:

> "It is a matter of common knowledge that the movements of fishing boats and other small water craft are constantly affected by the waves and thereby made unsteady, and that this is true without regard to the care exercised in

---

[6]     The Court finds it noteworthy that despite imposing a heightened—indeed, the "highest"—standard of care, the Summers Court still found no duty to warn.  See id.  As previously noted, in this Circuit, a shipowner only owes its passengers the duty of ordinary reasonable care under the circumstances.  See Chaparro, 693 F.3d at 1336; Keefe, 867 F.2d at 1322.

their operation.  The bigger the waves the more vigorous is the impact on the boat and the more severe and sudden the lurch or jerk caused thereby. Anyone who has ever been on such a boat or who has observed their movements from the shore, particularly when the tide was coming in, has observed how the waves upon occasion cause these boats to pitch and churn.  Such vigorous and unpredictable movements may readily cause a person to lose his balance and fall. . . . This is simply one of the natural hazards of this type of venture."

Id. at 405 (quoting Lockhart v. Martin, 324 P.2d 340, 341 (Cal. Ct. App. 1958)).

The same is true in this case.  It is undisputed that on the date of the incident, the vessel "proceeded slowly along the parade route[, f]requently stopping and starting to both maintain spacing and to keep with the parade organizers desired pace." (Pet. Facts ¶ 10.)  "No current was observed by the captain while holding station."  (Id. ¶ 12.) Approximately two hours into the parade, an unidentified woman lost her balance and fell into Galioto, causing them both to hit the deck (literally) and resulting in Galioto's injuries.  (Id. ¶¶ 11, 13; Resp. Facts ¶ 1.)  "Under the existing weather conditions no dangerous situation was created for passengers . . . of the vessel who exercised due care for their own safety.  Therefore in the exercise of due care on the part of the Master there was no duty to warn . . . ."  Summers, 262 F. Supp. at 404.

There are hazards inherent to standing on a boat.  Boats float on water which, by nature, is fluid.  Therefore, boats are prone to sudden movement caused by the currents, the wind, the wakes of other boats, the movements of its passengers, and sometimes wildlife.  Reasonable people know that boats are not stationary even when they are at rest.  As such, the danger that a passenger standing on a moving boat might fall down is an open and obvious danger for which no duty to warn is required.  See John Morrel, 534

12

F. Supp. 2d at 1351 ("The inherent dangers of operating a motor vehicle . . . are commonly known and most people in the United States become familiar with them in their every day lives."); see also Byrnes, 887 F. Supp. at 281 (finding that the fact that riding a motorcycle may result in a collision and injuries to the lower body held to be an obvious danger); Rodriguez v. New Holland N. Am., Inc., 767 So. 2d 543, 545 (Fla. Dist. Ct. App. 2000) (finding that a loader was inherently dangerous and danger of coming into contact with loader's boom was open and obvious; affirming partial summary judgment that defendants did not have duty to warn); Martin v. JLG Indus., Inc., No. 8:06-CV-234-T-24TBM, 2007 WL 2320593, at *4 (M.D. Fla. Aug. 10, 2007) (concluding that danger that someone could fall out of an open basket on a mechanical lift was open and obvious); Siemens Energy & Automation, Inc. v. Medina, 719 So. 2d 312, 315 (Fla. Dist. Ct. App. 1998) (finding no duty to warn of the obvious danger of standing on top of a nine-foot high piece of equipment that was not designed to be used as a work platform and then falling off); Cohen v. Gen. Motors Corp., Cadillac Div., 427 So. 2d 389, 391 (Fla. Dist. Ct. App. 1983) (finding no duty to warn of the obvious result that manually releasing an emergency brake may cause a car to move); Marzullo v. Crosman Corp., 289 F. Supp. 2d 1337, 1346 (M.D. Fla. 2003) (holding that the risk that one could suffer serious injury or death as a result of carelessly using a BB gun was obvious).  The fact that the vessel in question was travelling on a parade route which required frequent starting and stopping is immaterial, especially because it is undisputed that the boat was proceeding slowly; the danger of falling down on a moving boat is no less obvious

13

simply because the boat is stopping and starting with regularity—indeed, such a danger would be <u>more</u> obvious to a reasonable person.

Because Petitioner had no duty to warn its passengers of a risk of falling down while standing upon a boat, it is entitled to summary judgment on the claim contained in paragraph 13(i) of Galioto's Counterclaim.  (D.E. 10.)

> **b.    Failure to promulgate specific policies regarding providing warnings to prevent slip and falls.**

Galioto alleges that Petitioner was negligent for "[f]ailure to have proper policies and procedures in place to prevent passengers from falling during navigation[,]" (D.E. 10 ¶ 13(b)); "[f]ailing to promulgate and/or enforce adequate policies and/or procedures regarding passenger's falling during navigation[,]" (<u>id.</u> ¶ 13(h)); and "[f]ailing to promulgate and/or enforce adequate policies and/or procedures aboard the vessel[.]" (D.E. 10 ¶ 13(n).)  The Court has identified only one specific policy that Galioto argues Petitioner negligently failed to promulgate and enforce: a policy "regarding providing warnings to prevent slip and falls[.]"  (Resp. at 2, 12.)  During the course of the litigation, these claims morphed into one regarding Petitioner's alleged lack of policies and procedures regarding the service of alcohol, although alcohol is mentioned <u>nowhere</u> in Galioto's Answer and Counterclaim.  (<u>See</u> D.E. 10.)  For example, James W. Allen, Galioto's liability expert, issued a report outlining Galioto's theories of liability, opining that Petitioner's lack of policy regarding the consumption of alcohol "could be a contributing factor when the lady fell on Mr. Galioto."  (D.E. 58-5 at 4.)

First, with respect to Galioto's argument that Petitioner negligently failed "to have any specific policies and procedures in place regarding providing warnings to prevent slip and falls," (Resp. at 2, 12), Petitioner is entitled to summary judgment for the reasons stated in Section IV(a), <u>supra</u>.  That is, because Petitioner had no duty to warn its passengers of the dangers of falling down on a boat, <u>see</u> Section IV(a), <u>supra</u>, then <u>a fortiori</u> it had no duty to promulgate specific policies and procedures to provide such a warning.

Second, assuming arguendo that (1) Petitioner had a duty to promulgate and enforce a policy regarding the service and consumption of alcohol on the vessel and (2) that it breached this duty, the Court finds that Petitioner is entitled to summary judgment because there is no admissible evidence of alcohol service to the lady who fell into Galioto, that she was intoxicated,[7] or that such intoxication caused her fall.  Indeed, Galioto's theory is that the lady fell into him because "the Captain made a sudden, sharp stopping, reversing and rotating motion of the vessel, while waiting to go through a bridge."  (Resp. at 2.)  In any event, there is no evidence that a failure to promulgate and enforce a policy regarding the service and consumption of alcohol on the vessel proximately caused Galioto's injuries.  See <u>Evers v. Gen. Motors Corp.</u>, 770 F.2d 984, 986 (11th Cir. 1985) (noting that "conclusory allegations without specific supporting facts have no probative value"); <u>Gooding</u>, 445 So. 2d at 1018 ("A mere possibility of

---

[7]       Galioto's liability expert, James Allen, testified that Galioto told Allen in an interview that the lady who fell into him was intoxicated.  (<u>See</u> Allen Depo., D.E. 86-1 at 72.) However, "inadmissible hearsay 'cannot be considered on a motion for summary judgment.'" <u>Macuba v. Deboer</u>, 193 F.3d 1316, 1323 (11th Cir. 1999) (quoting <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir. 1990)).

such causation is not enough; and when the matter remains one of pure speculation or conjecture, . . . it becomes the duty of the court to direct a verdict for the defendant."). Accordingly, Petitioner is entitled to summary judgment to the extent that Galioto's claims assert a negligent failure to promulgate and enforce policies regarding the service and consumption of alcohol on the vessel.

For these reasons, Petitioner is entitled to summary judgment on the claims contained in paragraphs 13(b), (h), and (n) of Galioto's Counterclaim.  (D.E. 10.)

### c.    Failure to properly navigate the vessel.

Paragraph 13(a) alleges a negligent "[f]ailure to properly navigate the vessel[.]" (Id.)  Galioto argues that there is sufficient evidence to create a genuine issue of material fact as to whether Petitioner failed to properly navigate the vessel, including a video of the incident "which shows the Island Adventure traveling backward and then abruptly beginning to travel forward," and deposition testimony supporting Galioto's argument. (See Resp. at 16.)

The Court has reviewed the video of the incident and finds that it does not support—indeed, it disproves—Galioto's argument that "the Captain made a sudden, sharp stopping, reversing and rotating motion of the vessel," (Resp. at 2), or that the vessel "abruptly" reversed course, (id. at 16).  Rather, the video shows that just before the incident, the vessel was moving in one direction very slowly (perhaps one or two miles per hour).  (See DVD at 2:20-2:28.)  Then, the vessel stopped (although by no means "abruptly") and began moving in the other direction very slowly (again, perhaps one or two miles per hour).  (Id. at 2:28-2:29.)  Two to three seconds after the vessel began

16

moving in the other direction, the unidentified woman appears from off-camera and falls into Galioto.  (Id. at 2:31-2:32.)  No other person or object moved.  (See id.)

Where a video recording of an event obviously contradicts a party's version of the facts, the Court may accept the video's depiction instead of the party's.  See Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1315 (11th Cir. 2010) (citing Scott v. Harris, 550 U.S. 372, 380 (2007)) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); see also Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011). The Court finds that after seeing the video, no reasonable jury could conclude that Petitioner negligently failed to navigate the vessel.  See id.; Scott, 550 U.S. at 380. Indeed, Galioto's own expert testified that there was no negligence with respect to the navigation of the vessel, but only negligence in a failure to warn:

> Q.     In terms of the actual operation, the physical maneuvering of the boat, was there anything negligent in that respect?
>
> A.     No.  If – had he gave the people adequate warnings that he was going to be doing this periodically, it would have been fine, but he did what he had to do considering the conditions where they were at.

(James Depo., D.E. 86-1 at 58.)

> Q.     As I understand your opinion, there's not really any neglect on the part of the captain in terms of the physical handling or maneuvering of the boat, so the weather issue is moot.
>
> A.     Correct.

(Id. at 80.)  Quite simply, based on the video recording and the testimony of Galioto's own expert, no reasonable jury could believe Galioto's version of events with respect to his claim for failure to properly navigate the vessel.

Accordingly, Petitioner is entitled to summary judgment on the claim contained in paragraph 13(a) of Galioto's Counterclaim.  (D.E. 10.)

> **d.** **Failure to have adequate handrails and flooring.**

Galioto's Counterclaim asserts the following theories of negligence regarding handrails and flooring: (1) "[f]ailure to have proper handgrabs and/or rails in place in the event that passengers lose their balance[,]" (id. ¶ 13(c)); (2) "[f]ailing to have adequate handrails and/or handgrabs and/or handholds in the vicinity of the area of the passenger's fall[,]" (id. ¶ 13(e)); "[f]ailing to have adequate non slip or non skid surface in the vicinity of the area of the passenger's fall[,]" (id. ¶ 13(f)); and "[f]ailing to warn of the hazard of not having adequate handrails and/or handgrabs and/or handholds in the vicinity of the area of the passenger's fall[,]" (id. ¶ 13(g)).  Petitioner did not address these theories of negligence in its Motion, but Galioto addresses them generally in his Response.  (See D.E. 71 at 2, 5, 11, 15.)  In its Reply, Petitioner devotes substantial space to arguing that it is entitled to summary judgment as to Galioto's theories of negligence regarding the handrails and flooring.  (D.E. 86 at 4-8.)

"Arguments raised for the first time in a reply brief are not properly before a reviewing court."  United States v. Coy, 19 F.3d 629, 632 n.7 (11th Cir. 1994) (citing United States v. Oakley, 744 F.2d 1553, 1556 (11th Cir. 1984); see also Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005)); United States v. Whitesell, 314

F.3d 1251, 1256 (11th Cir. 2002)).  Because Petitioner failed to raise the handrail and flooring issues in its Motion, they are not properly before the Court.  See id.

Additionally, Magistrate Judge Jonathan Goodman recently issued an Order (D.E. 113) on Galioto's Motion for Sanctions for Spoliation of Evidence, which alleged that approximately one year after this litigation began, and before Galioto's expert had the opportunity to inspect the vessel, Petitioner ripped out all of the carpeting on the upper deck, ground down the deck under the carpet, and generally changed the upper-level of the *Island Adventure*.  (D.E. 57 at 1-2.)  For this conduct, Galioto sought the "most severe sanction of default."  (See id. at 6.)  Judge Goodman granted the motion in part, finding that Petitioner's destruction of evidence constituted "bad faith, but not in an outrageous or extreme way."  (D.E. 113 at 30.)  He therefore imposed the less severe sanction of "a rebuttable, permissible adverse inference (that the destroyed evidence would have demonstrated the existence of a dangerous condition which Boston Boat knew about, should have known about or created)."  (Id. at 30-31 (citing Swofford v. Eslinger, 671 F. Supp. 2d 1274, 1284 (M.D. Fla. 2009)).)[8]

On September 3, 2015, Galioto filed a Notice of his position that the imposition of a rebuttable presumption/adverse inference "in and of itself, should be considered sufficient to defeat Petitioner's Motion for Summary Judgment."  (D.E. 114 at 2.)  The Court need not take that position because it finds that Petitioner's failure to raise Galioto's claims of negligence regarding the flooring (and handrails) in its Motion

---

[8]      On September 14, 2015, Petitioner filed a Motion for Relief from Judge Goodman's Order.  (See D.E. 117.)  The Court will rule on Petitioner's Motion by separate Order.

precludes summary judgment in its favor on those claims.  (See D.E. 10 ¶ 13(c), (e), (f), & (g).)

   e.   **Limitation of liability.**

Finally, Petitioner argues that it "is entitled to limit its liability pursuant to the Limitation of Liability Act[.]"  (Mot. at 14.)   The Limited Liability Act provides, in relevant part:

> **(a) In general.**—. . . [T]he liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight. . . .
>
> **(b) Claims subject to limitation.**--Unless otherwise excluded by law, claims, debts, and liabilities subject to limitation under subsection (a) are those arising from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner.

46 U.S.C. § 30505 (emphasis added) (formerly 46 U.S.C. § 183, see In re Omega Protein, Inc., 548 F.3d 361, 371 n.5 (5th Cir. 2008)).   As an initial matter, Petitioner cites no authority for the proposition that it may limit its liability when the only collision that occurred was between two passengers.[9]   Assuming without deciding that this provision does apply here, genuine issues of material fact preclude summary judgment.

"Courts conduct a two-step inquiry to determine the effect of a vessel owner's petition for exoneration from or limitation of liability."   In re Royal Caribbean Cruises Ltd., 991 F. Supp. 2d at 1182 (citing In re Complaint of Messina, 574 F.3d 119, 126 (2d

---

[9]      The Parties shall file supplemental memoranda on whether this provision applies to the facts of this case on or before September 24, 2015.

Cir. 2009)).  First, the court determines "whether the accident was caused by actionable conduct, 'for if there was no fault or negligence for the shipowner to be privy to or have knowledge of within the meaning of the statute, there is no liability to be limited, and the owner would then be entitled to exoneration.'"  Id. (quoting Messina, 574 F.3d at 126); see also Am. Dredging Co. v. Lambert, 81 F.3d 127, 129 (11th Cir. 1996) ("A shipowner is entitled to exoneration from all liability for a maritime collision only when it demonstrates that it is free from any contributory fault.").  "The claimant bears the burden of proving that the accident was caused by actionable conduct."  Id. (citing Messina, 574 F.3d at 126-27)  Second, if the claimant carries the burden, "the owner then must prove that the 'actionable conduct or condition was without his privity or knowledge.'"  Id. (quoting Messina, 574 F.3d at 127).

As to the first step, the Court has already found that there are genuine issues of material fact precluding summary judgment on the question of Petitioner's negligence. (See Section IV(d), supra (finding that Galioto's claims regarding handrails and flooring survived summary judgment stage).)  Additionally, Petitioner presented no argument as to the claims for negligence contained in Paragraphs 13(d), (j), (k), (l), (m), (o), and (p) of Galioto's Counterclaim and, therefore, the Court is precluded from rendering summary judgment as to those claims.  Because genuine issues of material fact preclude the Court from determining "'whether the accident was caused by actionable conduct,'" In re Royal Caribbean Cruises Ltd., 991 F. Supp. 2d at 1182 (citing Messina, 574 F.3d at 126), it cannot determine whether Petitioner is entitled to limit its liability under 46 U.S.C. §

30505.  See id. 1185-87 (finding genuine issue of material fact as to whether shipowner was negligent precluded summary judgment as to limitation of liability).

**V.     Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.      Consistent with this Order, Petitioner's Motion for Summary Judgment (D.E. 58), filed June 9, 2015, is **GRANTED IN PART AND DENIED IN PART**;

2.      Petitioner is entitled to summary judgment for the claims contained in Paragraphs 13(a), (b), (h), (i), and (n) of Galioto's Counterclaim (D.E. 10); and

3.      On or before September 24, 2015, the Parties shall file supplemental memoranda regarding whether the Limited Liability Act, 46 U.S.C. § 30505, applies to this case.

**DONE AND ORDERED** in Chambers at Miami, Florida this 16th day of September, 2015.

_Joan A. Lenard_
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**